IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DEBORAH RIDER**                                                     **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO.: 2:23-cv-140-TBM-RPM**

**TOWN OF PRENTISS, MISSISSIPPI**                              **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Deborah Rider, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of her rights under Title VII of the Civil Rights Act of 1964 for retaliation and sex discrimination, and Americans with Disabilities Act (ADA) for disability discrimination against Defendant, Town of Prentiss, Mississippi. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1.      Plaintiff, Deborah Rider, is an adult female who resides in Jefferson Davis County, Mississippi.

2.      Defendant, Town of Prentiss, Mississippi, may be served through the City Clerk, Missy Jones, 911 3rd Street, Prentiss, Mississippi 39474.

**JURISDICTION AND VENUE**

3.      This Court has federal question and civil rights jurisdiction for a cause of action arising under Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act (ADA).

4.      This Court has subject matter and personal jurisdiction over the Defendant and venue is proper in this Court.

5. Plaintiff timely filed her Charge of Discrimination with the EEOC on December 16, 2022, a true and correct copy of which is attached as Exhibit "A." On May 1, 2023, Plaintiff amended her charge with the EEOC, a true and correct copy of which is attached as Exhibit "B." The EEOC issued a Notice of Right to Sue on June 28, 2023, a true and correct copy of which is attached as Exhibit "C." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 49-year-old female resident of Jefferson Davis County, Prentiss, Mississippi who later developed a disability while employed by Defendant.

7. Defendant initially hired Plaintiff on May 5, 2020, as a Patrol Officer with its Police Department.

8. During July 2021, Defendant promoted Plaintiff to the position of Sergeant.

9. During late February 2022, Plaintiff bruised her shoulder in an accident at home.

10. On or around March 2, 2022, Plaintiff was involved in a physical altercation with a suspect which resulted in a disabling injury.

11. Specifically, the altercation caused her shoulder injury to be further exacerbated.

12. On March 4, 2022, Plaintiff was medically evaluated by her treating physician, Dr. John Berry, at Southern Bone & Joint Specialists, P.A., in Hattiesburg.

13. Following that medical evaluation, Dr. Berry recommended that Plaintiff be permitted to "return to work with no pushing, pulling or lifting with right arm."

14. In response to this recommendation from her treating physician, however,

Defendant's then Chief of Police, Joe Bullock, male, informed Plaintiff that according to the Defendant's City Board members, none of which are trained physicians, that she could not work on light duty which was in direct contradiction to her treating physician's orders.

15. On April 20, 2022, in light of the Defendant's refusal to return her to work within her treating physician's guidelines, Plaintiff was again medically evaluated by Dr. Berry.

16. Based on Defendant's continued refusal to allow her to return to light duty, Dr. Berry recommended that Plaintiff stay "off work until further notice."

17. On June 1, 2022, following another medical evaluation and Defendant's refusal to accommodate his light duty restrictions for Plaintiff, Dr. Berry again recommended Plaintiff stay "off work until further notice."

18. On June 10, 2022, following yet another medical evaluation, Dr. Berry clarified that Plaintiff was now permitted to engage in a light level of work activity "which means lifting 20 pounds maximum, frequent lifting or carrying of objects that weight up to 10 pounds."

19. In response to this updated recommendation, however, Bullock, male, once again unjustifiably dictated that Plaintiff, female, could not return to work while on light duty.

20. On July 20, 2022, following yet another medical evaluation, Dr. Berry recommended that Plaintiff was again permitted to engage in a light level of work activity, "which means lifting 20 pounds maximum, frequent lifting or carrying of objects that weight up to 10 pounds…no overhead work."

21. In response to this updated recommendation based on her physical abilities at the time, however, yet again Bullock, male, inexplicability stated that Plaintiff, female, could not return to work for Defendant while on light duty.

22. On September 17, 2022, Richard Browning, male, became the new Chief of Police for Defendant.

23. On September 20, 2022, Browning, male, abruptly terminated Plaintiff, female, without even attempting to engage in the interactive process with Plaintiff, allegedly because she was unable to work with her light duty restrictions.

24. On October 17, 2022, at Southern Bone & Joint Specialists, P.A., in Hattiesburg, Physician's Assistant Seth Rhodes released Plaintiff back to full duty with no restrictions.

25. Plaintiff contends that prior to her abrupt termination on September 20, 2022, Browning was aware that Plaintiff was scheduled to return to her medical provider on or about October 17, 2022, and would likely be released to return back to work with no restrictions, yet he terminated her anyway.

26. Plaintiff contends that in November 2020, when employed as a Sergeant by Defendant that he was allowed by Defendant to work light duty and that his medical restrictions were even more severe than Plaintiff's medical restrictions were.

27. Ironically, Browning is now employed by Defendant as its Chief of Police, yet he has permanent medical restrictions even more severe and limiting than Plaintiff's; however, Defendant allows him as a male to enjoy employment with Defendant.

28. As a result of Defendant's intentionally discriminatory actions, Plaintiff filed an EEOC Charge of Discrimination due to sex and disability discrimination against the

Town of Prentiss, EEOC Charge No.: 423-2023-00373 on December 16, 2022 and after she engaged in protected activity by filing a Charge of Discrimination with the EEOC, Defendant unlawfully retaliated against Plaintiff by interfering with her ability to gain subsequent employment.

29. On February 3, 2023, in sworn statement submitted by Defendant in response to Plaintiff's EEOC Charge, Defendant submitted a Position Statement to the EEOC which contains false statements.

30. For example, Defendant's Position Statement alleges under penalty of perjury that "while [Plaintiff] was on medical leave with the [City of Prentiss], she began working for the Summit Police Department in Pike County…since July 2022 without any restrictions. Given that Rider was working elsewhere without restrictions on a full-time basis, Browning placed Rider on the work schedule for September. Rider was aware she was scheduled to work yet did not show up."

31. Plaintiff contends that this specific allegation submitted by Defendant to the EEOC under penalty of perjury is absolutely **false**.

32. The day after Plaintiff was sworn in at the Summit Police Department on or around August 15, 2022, Browning called two employees at the Brookhaven Police Department, Ms. Chardonnay Ottis and Mr. Vincent Fernando.

33. During the phone call initiated by Browning, Browning inappropriately shared Plaintiff's medical history and her confidential health information (i.e., Plaintiff's medical leave) to both Fernando and Ottis, both of which had no legitimate reason to know such information.

34. After the disturbing phone call disclosing Plaintiff's confidential health

5

information, both Browning and Fernando proceeded to attempt to get Plaintiff terminated from both of her positions with the Prentiss and Summit Police Departments.

35. As such, Plaintiff contends that the Summit Police Department was intentionally made aware of her confidential medical information and her treating physician's release to full duty in October 2022.

36. Plaintiff asserts that Browning then attempted to deceitfully get Ottis to send him a picture of Plaintiff being sworn in with the Summit Police Department to then get Bullock to fire her.

37. On or around August 15, 2023, Plaintiff had conversed with Bullock, and he permitted Plaintiff to work with the Summit Police Department because they would adhere to the law and allow her to work on full duty.

38. Browning was told by Bullock to not put Plaintiff on the work schedule in September 2022; however, he did anyway because he knew that Defendant would not allow her to work.

39. Plaintiff contends that Browning maliciously did not notify her that she was scheduled to work, nor did he send her a picture of the work schedule.

40. Plaintiff further contends that Browning made sure that the Summit Police Department knew that she had shoulder surgery and that she was on light duty while working Defendant.

41. Browning inappropriately notified Fernando regarding Plaintiff's medical/light duty conditions.

42. Plaintiff contends that Browning maliciously violated her HIPPA rights and rights pursuant to the ADA by intentionally disseminating this confidential medical

information to both Ottis and Fernando—individuals who had no authority to have knowledge of Plaintiff's medical and/or employment status with Defendant.

43. Defendant's Position Statement also alleges that Plaintiff "posted evidence from a felony case without authorization on her YouTube channel, that she interfered with police calls while on leave, and that she misused a veteran's crisis hotline."

44. Regarding this baseless allegation by Defendant that Plaintiff posted evidence from a felony case without authorization to her YouTube channel, Plaintiff contends this allegation is false.

45. Plaintiff also contends that she was not provided a body camera while working with Defendant, as they began to use such devices only after she was terminated.

46. Regarding Defendant's baseless allegation that Plaintiff interfered with "police calls" while on leave, Plaintiff contends that she assisted with investigations only when either Browning, Officer Mikka, or Bullock instructed her to participate in such investigations.

47. Furthermore, Plaintiff contends that Browning willfully withheld compensation to Plaintiff for the times she was called on to assist Defendant with its ongoing police investigations while on medical leave.

48. Regarding the allegation that Plaintiff misused a veteran's crisis hotline, Plaintiff contends that she has never engaged in any activity beyond the scope of her rights as a veteran who was receiving treatment by the VA.

49. Plaintiff contends that Browning alleged that Bullock told him (Chief Browning) that Plaintiff "lacked confidence" and that she was a "bad employee" during

7

her tenure with Defendant.

50. Regarding this allegation, Plaintiff contends Bullock never said anything to her corroborating this allegation, nor was she ever written up or reprimanded.

51. In direct contradiction, Bullock gave Plaintiff a positive recommendation for a position with the City of Collins.

52. Plaintiff furthermore contends that when Browning learned about Bullock's positive recommendation for Plaintiff, Browning became angry at Bullock.

53. As a direct result of Defendant's blatant acts of sex and disability discrimination, Plaintiff is now having to seek medical treatment for PTSD by her current medical provider, the VA.

54. As a result of her condition, she receives limited disability benefits for PTSD, a condition she was initially diagnosed with stemming from her service to our Country during the Iraq War.

55. Because of Defendant's actions, Plaintiff contacted the VA hotline because she was so stressed about the Defendant's blatant disregard for her medical issues and the fact that she was not able to work.

56. Plaintiff used the VA hotline appropriately as a constructive resource to help her manage her current situation caused by Defendant's actions.

57. Plaintiff was further instructed by Defendant that she would work nights once she was allowed by Defendant to return from medical leave.

58. Finally, when Plaintiff attempted to mitigate Defendant's action and applied for work at the Magee Police Department (MPD), Mr. Browning maliciously defamed her and intentionally gave a bad reference for her to the MPD which had its

intended effect of MPD refusing to hire her.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE VII – RETALIATION

59. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 58 above as if fully incorporated herein.

60. Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.,* by retaliating against Plaintiff for engaging in protected activity as described in more detail above. Plaintiff is entitled to protection against retaliation by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*

61. The acts of the Defendant constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and entitle Plaintiff to recovery of damages pursuant to Title VII.

### COUNT II: VIOLATION OF TITLE VII – SEX DISCRIMINATION

62. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 61 above as if fully incorporated herein.

63. Defendant has discriminated against Plaintiff because of her sex based on the facts identified above and which constitutes a violation of Title VII of the Civil Rights Act of 1964.

64. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep humiliation, anxiety and emotional distress.

65. The acts of the Defendant constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and entitle Plaintiff to recovery of damages pursuant to Title VII.

## COUNT III: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

66. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 65 above as if fully incorporated herein.

67. As described in more detail above, Defendant violated the ADA by terminating Plaintiff because of her disability and/or perceived disability.

68. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff. As such, Plaintiff is entitled to recover damages pursuant to the ADA.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages and reinstatement; or
2. Future wages in lieu of reinstatement; and
3. Compensatory damages;
4. Attorney's fees;
5. Lost benefits;
6. Pre-judgment and post-judgment interest;
7. Costs and expenses; and
8. Such further relief as is deemed just and proper.

THIS the 26th day of September 2023.

        Respectfully submitted,

        DEBORAH RIDER, Plaintiff

By:   /s/Louis H. Watson, Jr.
        Louis H. Watson, Jr. (MB# 9053)
        Nick Norris (MB# 101574)
        Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
Web:  www.watsonnorris.com